**State v. Arrington**
**Case No. 56454**
**Cuyahoga County, (8th)**

**Decided February 22, 1990**
[Cite as 1 AOA 270]

*For plaintiff-appellee*
*John T. Corrigan, Prosecuting Attorney, By: Karl Wetzel, Assistant Prosecuting Attorney, 1200 Ontario Street, Cleveland, Ohio 44113,*

*For defendant-appellant*
*David L. Doughten, Esq., Walsh & Doughten, L.P.A., 1040 Standard Building, 1370 Ontario Street, Cleveland, Ohio 44113.*

DYKE, J.,

Appellant, Steven Arrington, was convicted of two counts of trafficking, R.C. 2925.03(A)(2) and sentenced to concurrent terms of one year (for marijuana) and one and a half years (for cocaine).[1] Appellant raised the following assignment of error:

THE EVIDENCE IS INSUFFICIENT TO SUSTAIN CONVICTIONS FOR TRAFFICKING IN COCAINE AND FOR TRAFFICKING IN MARIJUANA.

A motion to suppress should be denied when the evidence is such that reasonable minds could reach different conclusions as to whether the material elements had been proved beyond a reasonable doubt. *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261.

The State of Ohio charged that appellant did "knowingly prepare for shipment, ship, transport, deliver, prepare for distribution or distribute [cocaine and marijuana] when knowing or having reasonable cause to believe [they] were intended for sale or resale by the offender or another."[2]

Detective Blount testified that he and his partner, Detective Bouyer, were patrolling in an automobile on a side street on February 8, 1988 (R. 12) at 1:30 p.m. in an area of high drug sales (R. 13). While eight houses away he saw

a group of four males, (including appellant (R. 46)) around a car. (R. 13.) Blount testified that in that neighborhood it is a common practice for drug sellers to sell to drivers in their cars. (R. 28.) As the officers approached the males they scattered and ran. The officers parked and ran after them. Three minutes later Blount saw appellant. (R. 39.) Blount stated that he saw appellant take some "articles" out of his pocket and place them under a potato chip bag on the ground. (R. 17.) He insisted that appellant had not observed him. Bouyer found the drugs under the bag. (R. 60.) Blount testified that appellant was six feet from the bag when he was arrested. (R. 18.)

Bouyer stated that appellant lived on the next street. (R. 67.) Both stated that they could not tell if someone was a seller or a buyer if all they knew was that drugs were found on him. (R. 53 and 64.) Bouyer stated that he did not know if appellant was selling or buying. (R. 72.)

Possession is a "requisite element" of drug trafficking under R.C. 2925.03(A)(2). *State* v. *Mateo* (August 17, 1989), Cuyahoga App. No. 55833, unreported, at p. 5. The trial court acquitted appellant of possession ("drug abuse") after he found that appellant did not handle or have physical possession of the drugs. Appellant was convicted of two counts of trafficking.

The trial judge stated "I am also totally skeptical of the officer's statement that he saw the defendant put the drugs under the potato chip bag . . . (and) I can't believe that the officer was standing . . . where he couldn't have been seen by the defendant . . . [s]o I really don't have any idea that this officer saw the defendant do what he said he saw him do with respect to placing the drugs there." (R. 177-178.)

The judge concluded by finding that "as to whether [appellant] played any role in the handling of the drugs or the physical possession of the drugs or whether that was somebody else's responsibility (is something) I have a lot of difficulty with. So I come to the conclusion that I am not convinced beyond a reasonable doubt that he was guilty under Count Three of possession of cocaine. However, I have no doubt that he is guilty of a conspiracy to trafficking (sic) in drugs." (R. 181.) Thus he rejected the testimony that appellant placed the drugs under the bag or had even removed them from his pocket.

There is no evidence of possession, constructive or actual. Even if he had possession, that is "drug abuse" only and "R.C. 2925.03(a)(2) imposes the additional element that possession of the controlled substance is incident to preparation for shipment, transportation, delivery or distribution of the drug through a sales." *Mateo* at p. 5. "Mere presence at the scene will not suffice to demonstrate complicity. *Columbus* v. *Russell* (1973), 39 Ohio App. 2d 139, 140." *State* v. *Jackson* (May 14, 1987), Cuyahoga App. No. 51924, unreported at 5 (conviction for R.C. 2925.03(A)(2) upheld only when defendant's ownership of house from which drugs were sold and her interference with the arrest of the seller aided distribution). In *Jackson* even if possession had been proven it was "just as reasonable a theory that appellant had received the packets from one or the other of the people in the car as it is that he was engaged in the trafficking activity (i.e., 2925.03(A) (2)). The circumstantial evidence of possession is not sufficient under these facts to support a conviction under R.C. 2925.03." *State* v. *Vanhorn* (March 31, 1983), unreported, at 9.

Evidence that appellant was near a car, ran and was arrested near drugs packaged for sale is not even circumstantial evidence of possession without evidence connecting appellant to those drugs. Even evidence of possession would not prove appellant prepared them for shipment, etc. Suspicious activity does not constitute illegal activity. If the evidence does not as a matter of law preclude all reasonable theories of innocence a conviction based solely on circumstantial evidence must be reversed. *State* v. *Jacobozzi* (1983), 6 Ohio St. 3d 59, 61.

The trial judge inferred *transport* from the fact that he was by the car, ran and was arrested near the drugs found under the bag. If multiple inference can be drawn from circumstantial evidence and an equally plausible theory of innocence is present any doubt must be resolved in favor of the accused. *Id.* at 62. It is equally plausible that appellant was innocently engaged in conversation with the driver.

It is not illegal for four males to assemble by a car and engage the occupant in conversation. The officers testified that between appellant's arrest and his trial they spoke to him in the neighborhood to "let him know we are in the area." (R. 44.) They told him to tell vandals to desist although he was not charged with the vandalism. (R. 65.) It is not unreasonable for a young, black male living in a neighborhood with drug sales and liable to be

stopped to run when approached by a police car whose officers assume a drug sale whenever someone speaks to someone in a car and believe the mere act of congregating justified a seizure.

This is not to deny the reality the officers face in combating the drug sellers. But although drugs are often sold to occupants of cars by people who gather near them it is just as likely that those merely by a car are engaged in an innocent activity as it is that they are engaged in an illegal one. The actions of the residents of drug "supermarkets" are nonetheless protected even if they coincidentally mirror those of the sellers.

The judge stated that the appellant "was part of the group that was selling the drugs from the front of the house of his friend . . . (and was a) conspirator at the supermarket for the sale of the drugs that was (sic) found." (R. 178-179.) Appellant was not charged with selling drugs, R.C. 2925.03 (A) (1), (A) (5) or (A) (7) or conspiracy, R.C. 2923.01. Conspiracy is a separate crime under R.C. 2923.01(A) and a lesser felony. There is no evidence of a sale.

The judge went on to say that what he "had seen in other cases and what common sense says is that" the drugs are stashed somewhere near where the car will be and "the only reasonable explanation" was that appellant stayed "to protect the stash" of drugs. (R. 178-179.) There is no evidence of this and protecting a stash is not even conspiracy to later transport, etc. It is equally plausible that appellant had just bought the drugs and he or another hid them (without the officer's knowledge) or he was about to buy them and knew that someone else had put them there. The officers admitted that they could not tell if someone was a seller or a buyer if all they knew was that drugs were found on him. (R. 53 and 64.) One of the officers admitted that he did not know whether *appellant* was selling or buying. (R. 72.)

The judge concluded that appellant "is part of a drug selling operation, but we don't know what his role is. We can *speculate* on what his role is. And I am satisfied that he was part of the group, the conspiracy . . . " (R. 180.) (Emphasis added.) Speculation is improper.

Finally, the judge found that the overt act required for conspiracy was "the placing of the drugs there by someone and the transportation of these drugs to a location where they could be sold." (R. 181.) He concluded that "was part of a conspiracy to knowingly transport them . . . [but] [i]t is not necessary that the state show

*who* did it." (R. 181-182.) On the contrary the burden is on the state to show that appellant committed an illegal act.

There was not sufficient evidence of possession or of a separate act of preparing for shipment, shipment, transport, delivery, preparing for distribution or distribution. The judgment is reversed and the convictions are vacated.

It is, therefore, considered that said appellant recover of said appellee his costs herein.

It is ordered that a special mandate be sent to said Court to carry this judgment into execution.

CORRIGAN, P.J., and MATIA, J., Concur.

---

[1] Appellant was found not guilty of drug abuse, R.C. 2925.11 (possession). Case 225292 was dismissed.

[2] The parties stipulated that .68 grams of cocaine and 1.6 grams of marijuana were recovered. (R. 5-6.)