The STATE of Ohio, Appellant,

v.

CROSBY et al., Appellees.

[Cite as *State v. Crosby* (1991), 72 Ohio App.3d 148.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 59711, 59712.

Decided Jan. 14, 1991.

John T. Corrigan, Prosecuting Attorney, and *Craig Eldridge,* for appellant.

*Robert M. Ingersoll,* Assistant Public Defender, and *Larry W. Zukerman,* for appellees.

---

*Per Curiam.*

The state appeals the trial court's grant of defendants-appellees' motions to suppress.

On March 23, 1989, at approximately 9:00 p.m., two Cleveland Police officers who were patrolling the area near East 101st Street and St. Clair Avenue in Cleveland, Ohio saw fifteen to twenty juvenile males congregated in that area. The officers got out of their car and went towards the group. Someone in the group allegedly told one of the officers that defendant Andre Spinks was a drug dealer. The officer then spoke with Spinks who, according to the officer, cooperated and allowed the officer to search him. The search did not reveal drugs or a weapon.

The police then left, but returned to the area at approximately 10:15 p.m. They observed a car parked at the curb and saw defendant Spinks sitting in the passenger side and defendant Michael Crosby in the driver's seat. They observed a male standing outside the car, on the passenger's side, leaning in the car window.

Detective Carosielli testified he did not see any drug transaction occur on that date, nor did he see anyone with money in his hands. Detective Carosielli admitted he did not see any movements between the individuals that would indicate something was being exchanged. Detective Carosielli further admitted he did not witness any drug transaction or exchange, and that it was "very possible that the three people he observed were engaged in legal activity." The record at the motion to suppress hearing indicates the detective investigated the behavior because it was "indicative of drug trafficking."

The record shows that as the officers approached the car, the male leaning inside the car stood up and ran. This individual was not apprehended.

Detective Carosielli claimed that as he approached the vehicle he saw Spinks lean forward and reach across his body with his right hand and place something on the floor. Upon cross-examination, however, Detective Carosielli admitted he did not see Spinks place anything on the floor and that Spinks' behavior could be consistent with not placing anything on the floor.

Spinks was ordered out of the car and patted down. Neither weapons nor drugs were found on his person.

Detective Carosielli testified that his fellow officer Sergeant Gercar asked Crosby if he possessed any drugs. Crosby, allegedly, made a quick movement with his hand to his jacket pocket. Sergeant Gercar grabbed his arm and reached into his pocket and pulled out a plastic bag which contained suspected cocaine.

The police arrested Crosby and both he and Spinks were taken to the rear of the car and detained. Detective Carosielli testified that he and Sergeant Gercar then looked into the car where he saw Spinks bend and found a vase with seven packets of suspected cocaine. Spinks was then arrested. The substances were later found to be cocaine.

The trial court found that the arrests were subsequent to the search and that the police lacked probable cause to arrest at the time of the search. The court further ruled that the totality of the circumstances was not sufficient to give the police a reasonable suspicion that criminal activity was occurring or about to occur and therefore the search could not be justified as a valid stop and frisk procedure pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

The issue in the present case is twofold: whether the facts constituted probable cause both for the search and for the subsequent arrest without reference to the evidence discovered by the search and, if the arrests were invalid, whether there existed articulable facts and circumstances to give rise to a reasonable suspicion that appellees were involved in criminal conduct so as to justify the searches made.

■ We find that, excluding the evidence resulting from the first searches, the record does not contain the existence of facts sufficient to constitute probable cause to arrest the defendants.

In *State v. Fahy* (1988), 49 Ohio App.3d 160, 551 N.E.2d 1311, the court held in its syllabus:

"Police may not search persons based solely on their reputation as drug users and their ambiguous movements at the trunk of a car.

"Mere association and conversation with known drug users are not enough to warrant an inference of current possession or sale of drugs. Also, mere

association or conversation without knowledge of the content of the conversation is not a sufficient basis for an inference of current drug related activity."

Absent the evidence resulting from the first searches, the record demonstrates that the arrests were made because the defendants' activities, *i.e.*, sitting in a parked car in an area known for drug activity, talking to an individual outside of the vehicle, were indicative of drug trafficking. This type of activity is insufficient to amount to probable cause to arrest. *Fahy*, *supra*.

The issue then becomes whether there existed articulable suspicion to justify the detention and search of the appellees.

In *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, the Supreme Court found that an *investigatory stop and subsequent protective search* for the safety of police officers was proper given the totality of the circumstances. The specific circumstances were as follows:

(1) the area was one in which heavy drug activity occurred, and weapons were prevalent;

(2) it was nighttime, when weapons could easily be hidden;

(3) one of the officers who approached the vehicle had previously made about five hundred arrests for guns or drugs city-wide and over one hundred arrests in the area whether defendant Bobo was parked;

(4) that officer knew how drugs were transacted in that area;

(5) that officer saw defendant Bobo bend down as if to hide something in his car;

(6) that officer's experience of recovering weapons or drugs suggested that defendant Bobo's gesture of ducking was to conceal a gun or drugs;

(7) the police were away from the protection of their vehicle when they approached defendant Bobo.

In *Bobo* it was evident that all the above factors played a role in the officer's decision to investigate. Unlike *Bobo,* the record in the present case indicates that the police officers stopped defendants solely because their actions in the officer's opinion amounted to drug trafficking. We find that the trial court reasonably could conclude that the officers relied on *nothing more* to justify their search than the fact that two occupants of a car were engaged in some sort of conversation with an individual leaning against the vehicle. This activity in and of itself does not amount to the articulable suspicion sufficient to justify a stop and search of the defendant. In *State v. Arrington* (1990), 64 Ohio App.3d 654, 582 N.E.2d 649, we stated, "It is not illegal for four males to assemble by a car and engage the occupant in

conversation. \* \* \* It is not unreasonable for a young, black male living in a neighborhood with drug sales and liable to be stopped to run when approached by a police car whose officers assume a drug sale whenever someone speaks to someone in a car and believe the mere act of congregating justified a seizure." *Id.* at 657–658, 582 N.E.2d at 651–652. This court went on to state: "This is not to deny the reality the officers face in combating the drug sellers. But although drugs are often sold to occupants of cars by people who gather near them it is just as likely that those merely by a car are engaged in an innocent activity as it is that they are engaged in an illegal one." *Id.* at 658, 582 N.E.2d at 652.

The record supports the trial court's conclusion that reasonable suspicion did not exist to justify a stop and frisk.

The state's assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

Dyke and Ann McManamon, JJ., concur.

Patton, C.J., dissents.

Patton, Chief Judge, dissenting.

I respectfully dissent. I believe that appellant's assignment of error has merit, and that the conduct which the police officers observed gave rise to a "reasonable suspicion" justifying an investigative stop and protective search of defendant Crosby and the automobile.

In *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, the Ohio Supreme Court upheld an investigatory stop and search of defendant's automobile from which the police recovered a firearm. The court noted that the test to be used to determine the appropriateness of an investigative stop was the totality of the circumstances. *Id.* at 178, 524 N.E.2d at 490, citing *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044, paragraph one of the syllabus. The court found that the investigatory stop and search in *Bobo* were proper in light of the following factors:

(1) The area was one in which heavy drug activity occurred;

(2) It was nighttime, when weapons could easily be hidden;

(3) One of the officers who approached the suspect's vehicle was experienced in the surveillance of drug and weapon activities;

(4) That officer had knowledge of how drug transactions occurred in the area;

(5) That officer saw defendant Bobo bend down as if to hide something in his automobile;

(6) That officer had experience in recovering weapons and drugs in such situations; and

(7) The police were away from the protection of their vehicle when they approached the suspect.

In the instant case the majority opinion states, "Absent the evidence resulting from the first searches, the record demonstrates that the arrests were made because the defendants' activities, *i.e.*, sitting in a parked car in an area known for drug activity, talking to an individual outside of the vehicle, were indicative of drug trafficking. This type of activity is insufficient to amount to probable cause to arrest." However, careful review of the record reveals the presence of other substantial factors which are specifically enumerated in *Bobo*.

Moreover, contrary to the majority's assertions, the similarities between the facts in *Bobo* and the facts in the instant case are not only identical, but the facts in the instant case are much stronger and provide even more justification for an investigatory stop and search.

*Bobo* was a case that originated in this court. *State v. Bobo* (Mar. 12, 1987), Cuyahoga App. No. 51883, unreported, 1987 WL 7883. The facts in *Bobo* were substantially similar to the facts in the instant case. In its *Bobo* opinion, this court set forth the testimony of the arresting officer as follows: "Sergeant Paul Mandzak, a member of the narcotics unit of the Cleveland Police Department, testified that he routinely patrolled the East 55th and Woodland and Outhwaite area, *an area known for high drug activity.* On October 11, 1985, he and two other detectives *noticed a vehicle containing two people* parked near an open field. A few minutes later they saw only the driver in the vehicle. At this point, the officers pulled behind the car. Sergeant Mandzak testified that upon approaching the car, *the defendant* appeared on the passenger side, turned his head toward the officers and then *bent forward toward the dashboard.* Though the car was legally parked, Sergeant Mandzak was suspicious as *the car was parked* by an open field *in an area known for drug sales.* Sergeant Mandzak *ordered the defendant out of the car.* Then the *officer looked inside the car, searching underneath the seat* and by the door. He discovered a handgun under the passenger's seat." (Emphasis added.) *Id.* at 1.

This court in its opinion went on to say, "*Sergeant Mandzak testified* that even after he ordered the appellant out of the car, he *had no knowledge of illegal activity. The officer was 'checking him out,' based upon his suspicions of illegal drug activity.* * * *

"Based upon the record, this court concludes that there were not articulable facts to justify the officers' reasonable suspicion that the appellant was engaged in criminal activity. The fact that the appellant may have 'bent forward' in a legally parked automobile in a high drug area does not justify the intrusion upon the appellant." (Emphasis added.) *Id.* at 3–4.

In reversing this court, the Supreme Court said, "given the previous factors, such movement may indicate an attempt to conceal a gun or drugs. Also, as noted above, Mandzak had a great deal of experience in making drug arrests, and the gesture made by *Bobo* was one often made by those engaged in a drug transaction when confronted by the police." *State v. Bobo, supra,* 37 Ohio St.3d at 179–180, 524 N.E.2d at 491–492.

A close review of the record reveals that the factors present in the instant case comport with each of the seven factors enumerated in *Bobo, supra.*

The record reveals that the following factors are present in the instant case:

*First factor,* the area in which the defendants were parked was known as a high drug trafficking area. Det. Carosielli, one of the officers who approached the vehicle in which the defendants were sitting, testified that several hundred possession and trafficking arrests had been made in this area in the last couple of years. Furthermore, he testified that the area was one of the targeted drug enforcement areas in the city of Cleveland and in addition, there had been numerous complaints of drug sales and use in the area.

*Second factor,* it was nighttime, at approximately 10:15 p.m., when weapons could easily be hidden.

*Third factor,* one of the officers who approached the vehicle, Det. Carosielli, was a Cleveland Police Department veteran of about seventeen years. He testified that during his tenure as a member of the narcotics squad he had the occasion to make several thousand drug arrests.

*Fourth factor,* as a member of the narcotics squad, Det. Carosielli was familiar with the area and how drug transactions occurred in this area. He testified that several hundred possession and trafficking arrests had been made in the area during the last couple of years.

*Fifth factor,* the officers observed two males seated in a parked car. They recognized Spinks as the individual they had questioned earlier. A third male was observed standing outside the car, leaning into the passenger side window. The officers observed the male who had been leaning inside the car stand up, look at them and run between two buildings when he saw the officers walking toward the car.

As Det. Carosielli approached the rear of the car, *he saw Spinks lean forward, reach across his body with his right hand and place something on*

*the floor.* Not knowing what Spinks had placed on the floor, Det. Carosielli alerted his partner, Sgt. Gercar, who was approaching the driver's side of the car, of what he had observed.

Each officer proceeded to a different side of the car where both doors were opened and the two defendants were ordered out of the car. Sgt. Gercar asked Crosby if he had any contraband or illegal substances on his person. At this time Crosby made a quick movement with his right hand to his right jacket pocket. Sgt. Gercar grabbed Crosby's arm, reached into his pocket and pulled out a plastic bag that contained a substance which appeared to be cocaine. The defendants were then taken to the rear of the car, at which time Det. Carosielli went to the passenger side of the vehicle, leaned in and examined the area he had seen Spinks lean toward. He discovered a vase with seven packets of suspected cocaine.

*Sixth factor,* Det. Carosielli had experience in recovering drugs. He indicated that he had made several thousand drug arrests as a member of the narcotics squad.

*Seventh factor,* the officers had left the protection of their vehicle, in that they were approaching the rear of defendant's car on foot.

Given the previous factors, including observation of a male leaning into the passenger window of an occupied car, who fled between two buildings when he saw two officers approaching; an officer observing a passenger lean forward and place something on the floor of a car as the officers approached; and an officer observing a suspect making a quick movement with his right hand to his right jacket pocket when being questioned by the officers, a reasonable police officer would suspect an attempt to conceal a gun or drugs. Also, as noted above, Det. Carosielli had a great deal of experience in making drug arrests, and the gestures made by the defendants are ones often made by those engaged in a drug transaction when confronted by the police. Finally, the police officers had left the protection of their vehicle, and as they approached the rear of the car, they observed the above actions of the defendants.

In addition to the above enumerated factors, it must also be noted that the police officers were initially summoned to the area in question by complaints of males selling and using drugs on the streets. When the officers arrived at approximately 9:00 p.m., they saw fifteen to twenty males congregated in the area. While checking several of the males, the officers received information that Spinks was a drug dealer. The officers questioned Spinks, who assured them he was not a drug dealer. Approximately one hour later the officers returned to the area, at which time they observed two males seated in a parked car. They recognized that one of the males was Spinks.

Under the totality of these circumstances, I would find that the officers reasonably stopped Crosby and Spinks for investigative purposes. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. *State v. Bobo, supra*, 37 Ohio St.3d at 180, 524 N.E.2d at 492. Furthermore, the search of Crosby's coat pocket and the area under the seat of the car constituted a reasonable and proper protective search pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. As such, I would reverse the judgment of the trial court granting the defendants' motion to suppress.

The majority cites *State v. Fahy* (1988), 49 Ohio App.3d 160, 551 N.E.2d 1311, in support of its affirmance. The *Fahy* case is distinguishable from the present case. In *Fahy*, the court applied the factors enunciated in *Bobo, supra*. The court concluded that no reasonable grounds existed to believe that a weapon was present. Also, there was no testimony that the area involved was a high crime area. Furthermore, the police officers observed no furtive action which could be interpreted as the hiding of a gun or drugs. In the present case each of the factors lacking in *Fahy* as well as all the remaining factors enunciated in *Bobo, supra*, are present. Therefore, the present case requires a different result.

The majority also cites *State v. Arrington* (1990), 64 Ohio App.3d 654, 582 N.E.2d 649. Review of the *Arrington* case reveals that factually it involved a group of four males who had congregated around a car. As the officers approached, the males ran. However, the instant case, as well as the *Bobo* case involves suspicious movements made within the confines of an automobile. Furthermore, in *Arrington* the court found that the evidence was insufficient to sustain the defendant's conviction of trafficking. Specifically, the court found no evidence of possession or sale.

As stated previously, the factors in the instant case are identical to and much stronger than those presented in *Bobo, supra*. I would find that the officers reasonably stopped the defendant for investigative purpose and thereafter conducted a proper protective search.

I, therefore, would reverse the trial court's grant of the defendants' motion to suppress.