The STATE of Ohio, Appellee,

v.

FINCHER, Appellant.

[Cite as *State v. Fincher* (1991), 76 Ohio App.3d 721.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 59431.

Decided Nov. 25, 1991.

---

*Stephanie Tubbs Jones,* Prosecuting Attorney, and *Larry Collins,* Assistant Prosecuting Attorney, for appellee.

*Stuart A. Saferin,* for appellant.

---

DYKE, Judge.

Appellant, William Fincher, was convicted of a violation of R.C. 2925.11 (possession of cocaine in less than the bulk amount) after stipulating to a prior conviction for an offense of violence (attempted rape). The trial court sentenced appellant to a three- to five-year term. On appeal appellant assigns three errors for review.

## I

"The trial court erred in allowing the use of evidence which was seized without a warrant and without any exception to the warrant requirement in violation of the Ohio Constitution and the United States Constitution."

Patrolman Gerald Crayton testified at the hearing on appellant's motion to suppress that at 4:08 p.m. he and his partner were in a police cruiser in an area of high drug activity when they saw appellant walking toward a car that had traffic stopped on the street. According to Crayton, "[the appellant] observed us and he quickly turned around and started heading back toward the side of the street that he had walked off of." Crayton and his partner exited the cruiser and Crayton pursued appellant but when he got within ten feet, appellant dropped a pill bottle which Crayton recovered. The pill bottle contained three rocks of suspected "crack" cocaine. After appellant was patted down and told his constitutional rights he told Crayton he was "just getting a little for a friend." A search at the station revealed a glass pipe containing suspected crack cocaine residue.

Appellant denied that he dropped the bottle or that he was "Mirandized," but admitted having the pipe which he said he was holding for a friend and did not know that it contained cocaine. He testified that he and some friends went to get in the car but when they saw the police they walked away so that his friends wouldn't get in trouble when the police stopped him, since he was a parolee living in a drug traffic area. The officer found the bottle on the ground and although appellant and his friend denied ownership the officer said that it was one of them and told his partner that he assumed he saw appellant throw the bottle. Appellant admitted that his companion, Michael, was going to buy cocaine when they saw the police but he insisted he was not involved.

■ The trial judge assesses the credibility of the witnesses and determines questions of fact. However, even assuming that appellant threw the bottle away, the pursuit that precipitated that abandonment must have been proper or the evidence must be suppressed.

"A defendant has no standing under the Fourth Amendment to the United States Constitution to object to a search and seizure of property that he has voluntarily abandoned." *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044, paragraph two of the syllabus. However, under certain circumstances the question may be "complicated by the possibility that the acts taken to establish the abandonment may have been brought about by unlawful police conduct." *Id.* at 296, 18 O.O.3d at 475, 414 N.E.2d at 1048.

■ The bottle was thrown away because the police officer was pursuing appellant. The mere fact that one is associating with or conversing with known drug users is not enough to warrant an inference of possession or sale of drugs. *Sibron v. New York* (1968), 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917. "A person's mere presence in an area of high crime activity does not suspend the protections of the Fourth and Fourteenth Amendments to the

United States Constitution." *State v. Chandler* (1989), 54 Ohio App.3d 92, 560 N.E.2d 832, paragraph two of the syllabus. Here, appellant walked toward a car that had stopped but walked away when he saw the police. On those facts alone appellant was "seized": his freedom of movement was curtailed by physical force or a show of authority. *United States v. Mendenhall* (1980), 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497. The issue is whether the investigative stop was proper.

"The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus. *Bobo* quoted *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, as follows:

" ' * * * [I]n determining whether the seizure and search were "unreasonable" our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the inference in the first place.'

" * * *

" ' * * * And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. * * * ' " *Bobo*, 37 Ohio St.3d at 178, 524 N.E.2d at 491, quoting *Terry*, 392 U.S. at 19–21, 88 S.Ct. at 1879, 20 L.Ed.2d at 905.

*Bobo* cited five factors which, when viewed collectively, justified an investigative stop: an area of high drug activity, the late hour, the experience and training of the officer, the officer's familiarity with the area and how drug transactions occur, and the officer's observation of defendant popping up and then ducking down or leaning forward which may indicate an attempt to conceal a gun or drugs. *Bobo*, 37 Ohio St.3d at 179, 524 N.E.2d at 491.

Here, the parties agree the area was one of high drug activity and the experience, training and familiarity of the officer are not disputed. However, not only was it only 4:08 p.m., but appellant had done nothing more than walk toward a stopped car, and, upon seeing the officers, walk away. We have previously held that a stop is not justified when based on nothing more than the fact that the defendant ran upon being approached by a police officer in an area of drug activity. *State v. Hewston* (Aug. 2, 1990), Cuyahoga App. No. 59095, unreported, at 3, 1990 WL 109183. The mere fact that drug selling may occur when pedestrians approach a stopped car does not justify an investigative stop. "This activity in and of itself does not amount to the articulable suspicion sufficient to justify a stop and search of the defendant." *State v. Crosby* (1991), 72 Ohio App.3d 148, 151, 594 N.E.2d 110, 112.

"In *State v. Arrington* (1990), 64 Ohio App.3d 654, 582 N.E.2d 649, we stated, 'It is not illegal for four males to assemble by a car and engage the occupant in conversation. * * * It is not unreasonable for a young, black male living in a neighborhood with drug sales and liable to be stopped to run when approached by a police car whose officers assume a drug sale whenever someone speaks to someone in a car and believe the mere act of congregating justified a seizure.' * * * This court went on to state: 'This is not to deny the reality the officers face in combating the drug sellers. But although drugs are often sold to occupants of cars by people who gather near them it is just as likely that those merely by a car are engaged in an innocent activity as it is that they are engaged in an illegal one.' *Id.* at 658, 582 N.E.2d at 652." *Crosby*, 72 Ohio App.3d at 151–152, 594 N.E.2d at 112–113.

Here, appellant's behavior may have been suspicious, but *Terry* and *Bobo* hold that the officer must have more than a vague suspicion. He must have a reasonable suspicion that criminal activity is imminent and must be able to state specific facts to justify the conclusion that the defendant is engaged in criminal activity. *Terry* and *Bobo, supra.*

Approaching an occupied car is not illegal and even when it occurs in an area of drug activity it does not justify a seizure even for investigative purposes. *Crosby; Hewston; Arrington, supra.* Given the officer's assumption that anyone who stands by an occupied car is involved in drug sales or possession it was not unreasonable to walk away from the scene. We hold that approaching an occupied car on foot and then, upon seeing the police, retreating from the scene is not sufficient activity to justify an investigative stop, even in an area of drug activity. The motion to suppress was improperly denied. Assignment of Error No. I is sustained.

We address the remaining assignments of error solely because of our obligation under App.R. 12(A).

## II

"The trial court erred in failing to consider sentencing guidelines in imposing the maximum sentence. R.C. 29[2]9.12."

Appellant notes that immediately after the trial judge stated that appellant had lied to the court and the jury and that she didn't like liars she sentenced him to the maximum term. Appellant contends that R.C. 2929.12 states the factors to be considered when sentencing for a felony and that lying is not one of them. Appellant also insists that the trial court failed to indicate that it had considered the statutory criteria.

■ "A silent record raises the presumption that a trial court considered the factors contained in R.C. 2929.12." *State v. Adams* (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361, paragraph three of the syllabus. Appellant cites *State v. Flors* (1987), 38 Ohio App.3d 133, 528 N.E.2d 950, for the proposition that a trial court may abuse its discretion if it apparently disregards the statutory criteria and fails to explain. However, *Flors* merely concluded that when the record reveals several mitigating factors and no factor that justified the maximum penalty a flat statement that the standards were followed is insufficient when the result is inconsistent with them. *Id.*

R.C. 2929.12 states as follows:

"(A) In determining the minimum term of imprisonment to be imposed for a felony for which an indefinite term of imprisonment is imposed, the court shall consider the risk that the offender will commit another crime * * *; the nature and circumstances of the offense; the victim impact statement * * *; and the history, character, and condition of the offender and his need for correctional or rehabilitative treatment.

"* * *

"(D) The criteria listed in divisions (B) and (C) of this section do not limit the matters that may be considered in determining the minimum term of imprisonment to be imposed for a felony for which an indefinite term of imprisonment is imposed."

■ The court was required to consider "the history, character, and condition of the offender and his need for correctional or rehabilitative treatment." In addition, the court is not limited to the stated criteria. Accordingly, when determining an indefinite sentence for a felony a trial court may consider the fact that a defendant lied. *State v. Barhams* (June 21, 1990), Cuyahoga App. No. 51748, unreported, at 15–16, 1990 WL 84253, citing *State v. O'Dell* (1989), 45 Ohio St.3d 140, 543 N.E.2d 1220, paragraph one of the syllabus (when sentencing judge was trial judge, fact that defendant knowingly gave false testimony may be considered when imposing sentence). The trial judge did not abuse her discretion. Had appellant's conviction not been vacated we would have overruled this assignment of error.

## III

"The trial court erred by failing to direct a verdict of acquittal and by allowing the verdict to stand which was not supported by the weight of the evidence."

 Had the evidence not been suppressed and the conviction vacated this court would have upheld the denial of appellant's motion for acquittal and held that the verdict was not against the manifest weight of the evidence.

## A

A motion for acquittal must be denied when "the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.

Officer Crayton testified that he saw appellant drop the pill bottle. The parties stipulated that the bottle and the pipe contained cocaine. Viewing the evidence in the light most favorable to the prosecution the motion for acquittal was properly denied.

## B

"A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus.

"In considering the claim that the conviction was against the manifest weight of the evidence * * * [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717, paragraph three of the syllabus.

This court has relied on guidelines to assist in the resolution of this question:

"In determining whether the decision of a trial court is against the manifest weight of the evidence, the following factors are guidelines to be taken into account by the reviewing court:

"1. The reviewing court is not required to accept as true the incredible;

"2. whether the evidence is uncontradicted;

"3. whether a witness was impeached;

"4. what was not proved;

"5. the certainty of the evidence;

"6. the reliability of the evidence;

"7. whether a witness' testimony is self-serving;

"8. whether the evidence is vague, * * * conflicting or fragmentary." (Emphasis deleted.) *State v. Mattison* (1985), 23 Ohio App.3d 10, 23 OBR 43, 490 N.E.2d 926, syllabus.

Appellant disputed Crayton's account by denying that he dropped the bottle or that he was Mirandized.

The trier of fact believed Crayton rather than appellant. Crayton's testimony was not incredible, contradictory, unreliable, uncertain or self-serving. The verdict was not against the manifest weight of the evidence.

Had the evidence not been suppressed Assignment of Error No. III would have been overruled.

In light of the fact that the motion to suppress should have been granted, the conviction is vacated and appellant is discharged.

*Judgment reversed.*

ANN MCMANAMON and JAMES D. SWEENEY, JJ., concur.