**In re AGOSTO.**

[Cite as *In re Agosto* (1993) 85 Ohio App.3d 188.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63642.

Decided Jan. 25, 1993.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Charles See,* Assistant Prosecuting Attorney, for appellee.

*Robert M. Ingersoll,* Assistant Cuyahoga County Public Defender, for appellant.

---

*Per Curiam.*

This appeal was filed and briefed as an accelerated appeal pursuant to Local R. 25 of this court.

Lester Agosto, defendant-appellant, timely appeals the decision of the Juvenile Court of Cuyahoga County Court of Common Pleas finding him delinquent based on his carrying a concealed weapon in violation of R.C. 2923.12. Appellant challenges the trial court's denial of his motion to suppress and argues that his conviction is against the sufficiency of the evidence. Having reviewed the legal arguments presented and the record in the case, we reverse the trial court's denial of motion to suppress and remand this matter to the trial court for further proceedings consistent herewith.

On November 16, 1991, Detective Michael Carosielli and other members of the Narcotics Unit, Swat Unit, and Strike Force Unit were involved in a "street sweep" operation in the Fourth District of Cleveland, near Kinsman Avenue. Carosielli testified that a "street sweep" is a concentration in a particular area by these units because of complaints of high drug activity. According to Carosielli, the officers were finished with the sweep and were transporting people who had been arrested to the Fifth District jail because there was no more room in the jail at the Fourth District.

At the intersection of East 105th Street and Carnegie Avenue, Carosielli's car was behind a black Oldsmobile driven by appellant. A Swat Unit vehicle was immediately to the right side of appellant's vehicle. From his position of observation, behind appellant, Carosielli testified that he was able to discern that appellant was acting very nervously. He based this opinion on some facts that he enunciated in his testimony. The first is that, from his observation position behind appellant, he observed appellant alternate between looking straight ahead and to the right at the Swat vehicle. The second is that, from his observation position behind appellant, he observed appellant move his right hand and appear to reach down, after which he leaned forward. The detective' concluded that these movements were consistent with appellant placing something on the floor of the car at his feet as if to hide something. According to Carosielli, these movements aroused his suspicions and he notified the Swat vehicle by radio that he was going to stop appellant's vehicle.

Carosielli testified that from his position of observation behind appellant's car he was unable to see appellant's hands or where he actually reached. Appellant's upper body was the only thing visible from his vantage point. He did not actually

see appellant place anything on the floor of the car. The detective also testified that there was nothing unusual or unlawful about the manner in which appellant drove his vehicle. Carosielli admitted that the movement he observed could have just as easily have been something as innocent as appellant scratching his leg. It was Carosielli's testimony that he was not investigating narcotics complaints in the area of East 105th Street and Carnegie. Carosielli admitted that the movement of appellant's head and shoulders, which he observed from his position behind appellant, was the only reason that he pulled appellant over. In his testimony, the officer made no reference to East 105th Street and Carnegie being an area of high crime.

After the light changed to green, appellant was stopped by Carosielli and the other officers. The other officers detained and secured the occupants of the vehicle. Carosielli testified that he went to the area where he had seen the motions and searched under the driver's seat and discovered a loaded .22 caliber revolver next to the transmission hump. Appellant was arrested for carrying a concealed weapon.

On or about November 27, 1991, a complaint was filed in the Cuyahoga County Common Pleas Court, Juvenile Division, which alleged that appellant was delinquent. The underlying basis for this complaint was appellant's arrest for carrying a concealed weapon in violation of R.C. 2923.12. On or about January 13, 1992, counsel for appellant filed a motion to suppress evidence, and a supplemental motion to suppress was filed on or about February 11, 1992. An evidentiary hearing was conducted on the motions and the motions were denied after that hearing. An adjudicatory hearing was conducted after the motion hearing and appellant was found to be delinquent. On or about March 31, 1992, appellant was ordered committed to the Ohio Department of Youth Services. Subsequently, a timely notice of appeal was filed with this court.

In support of this appeal, appellant assigns two errors.

Assignment of error one states as follows:

"The trial court denied Lester Agosto his constitutional right to be free of unreasonable searches and seizures, when it denied his motion to suppress evidence."

The issue before this court is whether under the totality of the circumstances Carosielli had a reasonable suspicion that appellant was engaged in criminal activity.

The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, citing *State v. Freeman* (1980), 64 Ohio St.2d 291,

414 N.E.2d 1044. In *Bobo*, the Ohio Supreme Court discussed seven factors that composed the totality of the circumstances in that case. The first was that the area in which the actions occurred was an area of very heavy drug activity in which weapons were prevalent. The second was that it was nighttime, when weapons could easily be hidden. The third was the experience of the officer, which in *Bobo* was approximately twenty years with a number of those years spent in drug and weapon surveillance. The fourth was the officers' knowledge of how drug transactions worked in the area. The fifth factor was the manner in which Bobo disappeared from view inside the vehicle, reappearing when the car was close, looking directly at the officers and then bending down as if to hide something under the front seat. The sixth factor was the officer's experience of recovering weapons or drugs after an individual ducked as if to reach under the seat. The seventh factor was the officers' being out of their vehicle and away from any protection if Bobo had been armed. *Id.*, 37 Ohio St.3d at 179–180, 524 N.E.2d at 491–492.

The application of these factors to the instant case and an evaluation of the totality of the circumstances do not lead to a reasonable suspicion that appellant was engaged in criminal activity. On the first factor of whether East 105th Street and Carnegie is an area of heavy drug activity in which weapons are prevalent, the testimony of Carosielli did not establish either characteristic. Carosielli testified that it was one of the areas where the Cleveland Police had received complaints of drug activity. However, he at no time testified to the prevalence of weapons in the area. Furthermore, Carosielli also stated that the police received complaints about the entire city of Cleveland. Clearly, the conclusion, as appellant points out, is that this area is no more an area of high drug activity than anywhere else in the city according to the testimony, and there was absolutely no testimony about the prevalence of weapons.

With respect to the second factor, it was not nighttime, so that factor was not even present for contemplation. The third factor of Carosielli's experience was only vaguely touched upon. He testified that in his experience he had arrested people placing guns or narcotics on the floor in the same manner. However, he did not testify to any extent about the length of that experience. In *Bobo*, the police sergeant testified that he had about twenty years of experience as a police officer and numerous years of drug and weapons surveillance that included about five hundred drug and weapons arrests. While Carosielli may in fact have such experience, it is not in the record before this court. He did not testify as to the length of his service as a police officer or the number of drug and weapon related arrests he had been involved in, and the trial court did not indicate judicial notice of any such factors relating to his experience. Likewise, there was no testimony

of Carosielli's knowledge of how drug or weapons involvement took place *in that area.* Thus, there was no evidence produced on the fourth factor in *Bobo.*

The fifth factor of *Bobo* was not present either. In *Bobo,* the officer testified to four distinct observations of Bobo. The first was that he completely disappeared from the officer's view. The second was that he reappeared when the officers got close. The third was that Bobo looked directly at the officers. The fourth observation relating to factor five was that Bobo then bent down again as if to hide something under the front seat. In the instant case, Carosielli's testimony pales in comparison. Carosielli testified that the only reason that he stopped appellant was because of a head and shoulder movement, which he admitted was equally consistent with something as innocent as scratching his leg. He also observed appellant look at the Swat car and then look forward again. There was no testimony comparable to that in *Bobo* on the fifth factor. Appellant never disappeared from the sight of Carosielli. Appellant did not make two moves toward the floor. Appellant was not doing anything illegal in the way that he operated the car. From the testimony, appellant could have been adjusting his radio, pulling an ashtray, or adjusting his socks. Further, it is not a furtive movement to look at a car full of Swat officers.

The sixth *Bobo* factor was the only one present. Carosielli did testify that he had recovered weapons and drugs after a person had made a movement of the type that he observed. Finally, the seventh factor was not present because Carosielli was inside his vehicle, unlike the officers in *Bobo.*

Interestingly, in *State v. Crosby* (1991), 72 Ohio App.3d 148, 594 N.E.2d 110, another case involving Carosielli and Sergeant Gercar, this court held that the record supported the trial court's conclusion that reasonable suspicion did not exist to justify a stop and frisk. In *Crosby,* at 151, 594 N.E.2d at 112, this court offered the following rationale for its conclusion:

"In *Bobo* it was evident that all the above factors played a role in the officer's decision to investigate. Unlike *Bobo,* the record in the present case indicates that the police officers stopped defendants solely because their actions in the officer's opinion amounted to drug trafficking. We find that the trial court reasonably could conclude that the officers relied on *nothing more* to justify their search than the fact that two occupants of a car were engaged in some sort of conversation with an individual leaning against the vehicle. This activity in and of itself does not amount to the articulable suspicion sufficient to justify a stop and search of the defendant." (Emphasis *sic.*)

We, therefore, hold that the totality of the circumstances in the instant case was such that the trial court's conclusion was erroneous. The Ohio Supreme Court, in *Bobo,* relied on the presence of all seven factors to conclude that the

search was reasonable. In the instant case, one of the factors of *Bobo* was present. The facts and circumstances of this case were not sufficient to create a reasonable suspicion of criminal activity.

Appellant's assignment of error one is well taken and the evidence should have been suppressed.

Appellant's assignment of error two states:

"The trial court denied Lester Agosto his liberty without due process of law, when it judged him a delinquent child based on evidence which was, as a matter of law, insufficient to prove him delinquent beyond a reasonable doubt."

Because of our decision that the evidence should have been suppressed in this case, this assigned error is moot because appellee certainly could not prosecute a case for carrying a concealed weapon without the weapon.

Judgment reversed as to the motion to suppress.

*Judgment reversed*
*and cause remanded.*

DYKE, P.J., PATTON and BLACKMON, JJ., concur.

PATTON, Judge, concurring.

I concur with the majority but find it necessary to distinguish my dissent in *State v. Crosby* (1991), 72 Ohio App.3d 148, 594 N.E.2d 110, from the instant case.

The Fourth Amendment search and seizure cases present difficult challenges on appellate review. Each case is factually unique and there exist no bright-line tests. Our role is to examine the testimony and evidence presented and, with the guidance of the factors enumerated in *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, make a judgment regarding the propriety of the investigatory stop.

In *State v. Crosby*, I found that the seven factors enumerated in *State v. Bobo* were present.

The case *sub judice* is factually distinguishable from *State v. Bobo* and also distinguishable as I interpreted the evidence in *State v. Crosby*. In this case, the seven *Bobo* factors were clearly not present. The officers did not have specific and articulable facts to justify an investigatory stop of the defendant. It is not unusual for a citizen to appear nervous when a car occupied by members of a SWAT unit, especially with their helmets on, is moving parallel to you. This sight would catch the attention of virtually any citizen, who would conceivably look back and forth in a curious and even nervous manner. Detective Carosielli's testimony that the defendant appeared nervous and that he observed him reach down as if to hide something does not, in and of itself, justify an investigatory stop. The evidence in this case revealed that the incident occurred during the

early evening hours on Saturday, November 16, 1991, approximately 5:30 p.m. The defendant was observed while stopping for a traffic light and, at the same time, a vehicle containing the SWAT unit members was coming to a stop at the same traffic light alongside the defendant's car. The area where the defendant was observed was not a remote place which would cause the officers to abandon their vehicle, as well as their safety, in order to make their approach. In fact, the area is a busy and heavily traveled intersection of East 105th and Carnegie in the city of Cleveland. Thus, this factual situation does not completely comport with the factors enumerated in *Bobo*.

Therefore, I concur with the majority in reversing this case based upon the record before us.