DECISION AND JUDGMENT ENTRY
This is an appeal by the State of Ohio, pursuant to R.C. 2945.67(A) and Crim.R. 12(J), from a Chillicothe Municipal Court judgment that suppressed evidence found during the search of a vehicle driven by Jacob A. Gaus, defendant below and appellee herein.[1] The State assigns the following error for our review:
 "THE TRIAL COURT ACTED TO THE MANIFEST PREJUDICE OF THE PLAINTIFF-APPELLANT BY SUSTAINING A MOTION TO SUPPRESS FILED BY THE DEFENDANT-APPELLEE BECAUSE THE EVIDENCE ADDUCED ON SUCH MOTION CONFIRMED THAT THE OFFICER HAD REASONABLE SUSPICION TO MAKE THE STOP AND INQUIRY IN THIS CASE."
The record reveals the following facts pertinent to this appeal. On December 9, 1999, at approximately 11 AM, Ohio State Highway Patrol Trooper Terri Mikesh was driving eastbound on U.S. Route 50 when she noticed a vehicle on the side of the road on the westbound portion of the highway. It is Highway Patrol policy to check stopped vehicles on the side of the road in case they are disabled and in need of assistance. Accordingly, Trooper Mikesh turned around and checked the vehicle. She pulled behind the vehicle, exited her cruiser and noticed the vehicle's two (2) occupants reach "downward toward the floorboard." Trooper Mikesh walked to the front passenger window and smelled what she "thought" was an odor of marijuana. The officer spoke with the occupants and immediately discovered that the car was not disabled and that they were simply waiting for the driver's father to direct them to a job site.
Trooper Mikesh questioned the occupants and learned that appellee and Joseph Walburn were seated in the driver's seat and the passenger's seat, respectively. She then ran a computer check and discovered that appellee's driver's license was suspended due to a prior drug conviction. Trooper Mikesh confronted appellee about this issue and appellee produced paperwork from Municipal Court granting him occupational driving privileges. This showing satisfied Trooper Mikesh that appellee lawfully operated the vehicle. Nevertheless, Trooper Mikesh wanted a drug sniffing dog check the vehicle and so she radioed for backup.[2] Trooper Mikesh then detained appellee and Mr. Walburn at the scene until backup arrived. Appellee's father then appeared and was ready to take the men to their job site for the day, but Trooper Mikesh would not let them leave.
Finally, after about twenty (20) minutes, another officer arrived and Trooper Mikesh began walking the drug sniffing dog around the vehicle. The dog gave a positive signal alerting the officers to the possible presence of drugs. The officers then removed appellee and Walburn from the vehicle and conducted a "probable cause search." The search produced marijuana seeds, stems and residue.
The officer subsequently cited appellee with possession of marijuana in violation of R.C. 2925.11(C)(3)(a). He pled not guilty and moved to suppress the evidence taken from his vehicle during the search.[3]
On February 23, 2000, the trial court conducted a hearing to consider appellee's motion to suppress evidence. At the hearing Trooper Mikesh testified that she detained the two men because she thought she smelled what might be marijuana and because she had "confidential information" that appellee was involved with narcotics. The officer also testified, however, that she could not be certain that the smell was marijuana. She also refused to name the source of her "confidential information" regarding appellee's involvement with drugs.
The trial court took the matter under advisement and, on March 14, 2000, found that Trooper Mikesh did not have "a reasonable suspicion of illegal activity" sufficient to detain appellee at the scene. The court reasoned that appellee "explained his presence and this information was confirmed when his father arrived" to show him to the job site. It was further noted that the fact that Trooper Mikesh recognized appellee's name "did not provide a suspicion that he was engaged in wrongdoing." Finally, the court opined that "[t]he officer's description of the movement by the two men that they seemed to lean over and of the odor she may have smelled was so vague that the Court is not satisfied that she was justified in detaining [appellee] after she discovered that the vehicle was not disabled." The court ordered that the evidence found in appellee's vehicle be suppressed. This appeal followed.
The State argues in its assignment of error that the trial court erred in suppressing the evidence found in appellee's vehicle. We disagree. It should be noted at the outset that appellate review of such rulings present mixed questions of law and fact. See State v. McNamara (1997),124 Ohio App.3d 706, 710, 707 N.E.2d 539, 541; State v. Brite (1997),120 Ohio App.3d 517, 519; 698 N.E.2d 478, 479; also see United States v.Martinez (C.A. 11 1992), 949 F.2d 1117, 1119; United States v. Wilson
(C.A.11 1990), 894 F.2d 1245, 1254. A trial court assumes the role of trier of fact during proceedings on motions to suppress. State v. Payne
(1995), 104 Ohio App.3d 364, 367, 662 N.E.2d 60, 61-62; State v.Robinson (1994), 98 Ohio App.3d 560, 570, 649 N.E.2d 18, 25; State v.Rossiter (1993), 88 Ohio App.3d 162, 166, 623 N.E.2d 645, 648. Thus, the evaluation of evidence and credibility of witnesses during those proceedings are issues to be determined by the trial court. State v.Smith (1997), 80 Ohio St.3d 89, 105, 684 N.E.2d 668, 685; State v.Brooks (1996), 75 Ohio St.3d 148, 154, 661 N.E.2d 1030, 1036-1037; Statev. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584-585. Factual findings by the court are to be accepted by us unless they are "clearly erroneous." State v. Long (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1,3; State v. Kennedy (Sep. 30, 1999), Ross App. No. 99CA2472, unreported;State v. Babcock (Feb. 13, 1997), Washington App. No. 95CA40, unreported; also see United States v. Lewis (C.A.1 1994), 40 F.3d 1325,1332. That is to say, a reviewing court is bound to accept a trial court's factual determinations made during a suppression hearing so long as the court's determinations are supported by competent and credible evidence. State v. Harris (1994), 98 Ohio App.3d 543, 546, 649 N.E.2d 7,9; State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906,908; also see State v. DePalma (Jan. 18, 1991), Ross App. No. 1633, unreported. The application of the law to those facts, however, is then subject to de novo review. Harris, supra at 546, 649 N.E.2d at 9; Statev. Anderson (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034, 1036;also see Lewis, supra 1332; Wilson, supra at 1254. With these principles in mind, we turn our attention to the particular facts and circumstances of this case.
Our first order of business is to precisely define the issue before us for review. This is not a case in which we must determine the legality of a stop. In the instant case appellee was already stopped along the roadside and Trooper Mikesh approached him to see if he needed assistance. This contact is in the nature of a "consensual encounter" and did not implicate any Fourth Amendment concerns.[4] However, when Trooper Mikesh detained appellee at the scene, prohibiting him from leaving with his father, the encounter ripened into a detention subject to Fourth Amendment protections.
It is well-settled law that a law enforcement officer's detention of an individual does not violate either the federal or state constitution if there are "specific and articulable facts" indicating that the detention was reasonable. State v. Chatton (1984), 11 Ohio St.3d 59, 61,463 N.E.2d 1237, 1239; also see Maumee v. Johnson (1993),90 Ohio App.3d 169, 171, 628 N.E.2d 115, 116; State v. Foster (1993),87 Ohio App.3d 32, 40, 621 N.E.2d 843, 848; State v. Hart (1988),61 Ohio App.3d 37, 41, 572 N.E.2d 141, 144. To justify an investigatory detention, law enforcement must demonstrate "specific and articulable" facts which, when considered with the rational inferences to be drawn therefrom, would justify a reasonable suspicion that the person detained was involved in illegal activity. See State v. Correa (1995),108 Ohio App.3d 362, 366, 670 N.E.2d 1035, 1038; also see State v.Ramsey (Oct. 6, 2000), Ashland App. No. 99COA1336, unreported; State v.McDowell (Oct. 6, 2000), Ashland App. No. 99COA1328, unreported. Whether a detention is reasonable must be determined from the "totality of the circumstances." See State v. Comen (1990), 50 Ohio St.3d 206, 210,553 N.E.2d 640, 645; State v. Bobo (1988), 37 Ohio St.3d 177,524 N.E.2d 489, at paragraph one of the syllabus; State v. Freeman
(1980), 64 Ohio St.2d 291, 414 N.E.2d 1044, at paragraph one of the syllabus. That totality is to be viewed through the eyes of the reasonable and prudent officer on the scene who must react to events as they unfold. State v. Andrews (1991), 57 Ohio St.3d 86, 87-88,565 N.E.2d 1271, 1273; also see State v. Carter (1994), 69 Ohio St.3d 57,65, 630 N.E.2d 355, 362. Having said that, it is important to note that the officer's "inchoate hunch" or mere suspicion of criminal activity will not justify the detention. See State v. Gonsior (1996),117 Ohio App.3d 481, 486, 690 N.E.2d 1293, 1296.
The evidence adduced below reveals that Trooper Mikesh detained appellee at the scene because (1) she thought she smelled what might have been marijuana, and (2) that she had "confidential information" that appellee was involved with narcotics. The trial court held that these reasons were "so vague" that they did not justify the detention. Given the totality of the circumstances in this case, we find no error in the trial court's ruling. Trooper Mikesh did not definitively identify the smell she detected as the smell of marijuana. Moreover, the gist of her testimony was that she only smelled the odor once when she approached the vehicle. Apparently, the officer did not detect any lingering odor of the drug or any other smell which would conclusively lead her to determine that marijuana was present.
We acknowledge the recent decision in State v. Moore (2000),90 Ohio St.3d 47, 734 N.E.2d 804, at the syllabus, wherein the Ohio Supreme Court held that "[t]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search." However, that case is distinguishable from the cause sub judice. The smell in Moore was described as a "strong odor" of fresh burnt marijuana which emanated from both the vehicle and from the defendant's clothing. By contrast, Trooper Mikesh testified below that she could not be "certain" that the smell that she detected was, in fact, marijuana. Additionally, we note that no evidence was adduced to establish that Trooper Mikesh was "qualified to recognize the odor" of marijuana as was done in Moore. We agree with the trial court's conclusion that the officer's single, uncertain smell in this case is an insufficient foundation upon which to base the detention.
We are equally unpersuaded by the officer's "confidential information" that appellee was involved with narcotics. We first note that Trooper Mikesh did not reveal the source of her "confidential information." The officer admitted that she had "never had any contact" with appellee before this incident, and that she "didn't know him from sight." Without some sort of additional explanation, neither this Court nor the court below has any basis to conclude that the information came from a reliable source. Even assuming, arguendo, that the source was reliable, law enforcement still may not detain and search people based solely on their reputations as drug users. See State v. Linson (1988), 51 Ohio App.3d 49,51, 554 N.E.2d 146, 147; State v. Fahy (1988), 49 Ohio App.3d 160, 162,551 N.E.2d 1311, 1314; also see State v. Crosby (1991), 72 Ohio App.3d 148,150, 594 N.E.2d 110, 112. The bare assertion by a law enforcement officer that she has "confidential information" that a person is involved with narcotics is simply insufficient to justify detaining that person and conducting a vehicle search.
Furthermore, the officer's observation of appellee and Walburn reaching "downward toward the floorboard" as she approached the vehicle does not justify the detention. This movement was the only so-called "furtive movement" to which Trooper Mikesh testified. She did not relate any other suspicious or nervous behavior by either of the vehicle's occupants. Claims of "furtive movement" must be carefully examined by the courts. Such movements are susceptible of police misinterpretation. Professor Katz in Katz, Ohio Arrest, Search and Seizure (1998 Ed.) 261, § T 14.03(B) explains the difficulties with this scenario as follows:
 "[A] court reviewing reasonable suspicion must analyze the facts and not merely accept general claims of `furtive gestures.' For example, where police suspicion is triggered merely by movement of a car's occupant, suggesting the concealment of an object under the seat, that alone should not be sufficient because it is also perfectly consistent with innocent behavior. Vague, general claims of movement or `rustling around' or `leaning over' will not provide a satisfactory basis for an investigative stop." (Footnotes omitted.) Id. at 262.
In the case sub judice, the trial court held that the one furtive gesture observed by Trooper Mikesh was insufficient to give her the "reasonable suspicion" necessary to detain appellee until backup arrived. Given that the court below was in a better position than this Court to view the witness, and observe her demeanor, gestures and voice inflections, and then use those observations in weighing the credibility of her testimony, see Myers v. Garson (1993), 66 Ohio St.3d 610, 615,614 N.E.2d 742, 745; Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276, we will not second guess that decision.
We emphasize that our ruling in this case is fact specific and that, under even a slightly different set of circumstances, the trial court may well have properly found a "reasonable suspicion" of criminal activity. That said, we hold that an undefined smell, which might or might not be marijuana, coupled with a single furtive gesture and undisclosed "confidential information" of drug activity is insufficient to warrant the detention of an otherwise law abiding suspect.
The State counters by citing our decision in State v. Joshua (Jul. 7, 1999), Ross App. No. 98CA2466, unreported, wherein we held that a forty-two (42) minute detention was reasonable to investigate suspicion of drug activity. The facts in Joshua are, however, distinguishable from those in the instant case. In Joshua, the suspect had been lawfully stopped for a traffic violation.[5] We find no similar violation in the case sub judice. Thus, we need not consider whether the length of the detention in this case was reasonable. Rather, we agree with the trial court that no justification existed for appellee's detention.
For all these reasons, we find no merit in appellant's assignment of error and it is accordingly overruled. We hereby affirm the trial court's judgment.
JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 ___________________________ Peter B. Abele, Presiding Judge
Kline, J. Evans, J.: Concur in Judgment Opinion.
[1] This case was reassigned from Judge Evans to Judge Abele on February 7, 2001.
[2] Trooper Mikesh actually had the dog with her at the scene, but it is apparently Highway Patrol policy to summon a backup unit for safety reasons.
[3] Although there are references to a suppression motion throughout the proceedings below, we have not found a written motion in the record before us. The transcript of docket and journal entries does not show that appellee filed a written motion.
[4] The Fourth Amendment to the United States Constitution guarantees the rights of people to be secure from unreasonable searches and seizures. This protection is made applicable to the states through theFourteenth Amendment Due Process Clause, see generally Mapp v. Ohio
(1961), 367 U.S. 643, 6 L.Ed.2d 1081, 81 S.Ct. 1684, and, in any event, similar safeguards are provided under Section 14, Article I of the Ohio Constitution. See State ex rel. Wright v. Ohio Adult Parole Auth.
(1996), 75 Ohio St.3d 82, 88, 661 N.E.2d 728, 733; State v. Andrews
(1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1273. It is axiomatic, however, that the Fourth Amendment does not proscribe all contact between the police and citizens. I.N.S. v. Delgado (1984), 466 U.S. 210, 215,80 L.Ed.2d 247, 254, 104 S.Ct. 1758, 1762; also see State v. Smith (1989),45 Ohio St.3d 255, 257, 544 N.E.2d 239, 241. It does not, for instance, prevent a policeman from addressing questions to somebody on the street.Terry v. Ohio (1967), 392 U.S. 1, 19, 20 L.Ed.2d 889, 905,88 S.Ct. 1868, 1879 at fn. 16. A "seizure" does not occur simply because police approach an individual and ask a few questions. Florida v. Bostick
(1991), 501 U.S. 429, 434, 115 L.Ed.2d 389, 398, 111 S.Ct. 2382,2386.
[5] There is no question that, when police officers observe traffic violations, they are automatically justified in stopping and detaining the vehicle involved. See State v. Kennedy (Sep. 30, 1999), Ross App. No. 99CA2472, unreported; State v. Hart (Dec. 23, 1997), Athens App. No. 97CA18, unreported; State v. McNamara (Dec. 19, 1997), Athens App. No. 97CA11, unreported; State v. Chelikowsky (Aug. 18, 1992), Pickaway App. No. 91CA27, unreported.