The STATE of Ohio, Appellant,

v.

COOK, Appellee.

[Cite as *State v. Cook* (1995), 107 Ohio App.3d 154.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. CA 15292.

Decided Oct. 27, 1995.

*Mathias H. Heck, Jr.,* Montgomery County Prosecuting Attorney, and *Carley J. Ingram,* Assistant Prosecuting Attorney, for appellant.

*Lynn G. Koeller,* Montgomery County Public Defender, and *Charles L. Grove,* Assistant Public Defender, for appellee.

FREDERICK N. YOUNG, Judge.

The state of Ohio appeals pursuant to Crim.R. 12(J) from the decision of the Common Pleas Court of Montgomery County, Ohio, to suppress the evidence of

crack cocaine found near the person of Willie Cook, who was indicted for its possession under R.C. 2925.11(A).

The state brings to us three assignments of error:

"I. The court below erred in determining that the officer's fears were not reasonable.

"II. The court below erred in failing to recognize the officers' duty to remove the trespassing defendant from the truck and to order him off the property.

"III. The court below erred in failing to bring its independent judgement to bear on the issues of law and fact before it."

■ We have carefully reviewed the entire record, including the transcript of the testimony given at the suppression hearing held on December 16 and 19, 1994, and we find that the trial court's findings of fact are supported by competent credible evidence in the record and it applied the proper legal analysis to the facts. Furthermore, the court did not fail to bring its independent judgment to bear on the issues before it simply because it was assisted by the memorandum filed by the defendant.

Based upon the findings and conclusions of the decision and opinion of the Hon. John W. Kessler, which follow, we overrule all three assignments of error.

Judge Kessler's opinion reads:

"This matter came before the Court upon Defendant's motion to suppress all physical evidence and statements obtained from Defendant as a result of his arrest for Drug Abuse on November 6, 1994. Defendant asserts that crack cocaine, the evidence supporting the charge of Drug Abuse, was unlawfully seized in violation of Defendant's constitutional right to be free from unreasonable search and seizure. A hearing was held on December 16 and December 19, 1994.

"FACTS

"On November 6, 1994, at about 7:30 p.m., Dayton Police Officers Daly, Stapleton, Aurrichio and House were on routine patrol in the parking lot of a drive-thru and church at the corner of West Riverview and Broadway in the City of Dayton. The officers' experience with the location included nightly patrols during which they regularly prohibited persons from congregating and drinking in public. Previous to November 6, 1994, the officers had on one occasion found Defendant, Willie Cook, drinking with other persons along a wall that borders the parking lot. On that occasion, the officers warned Cook not to loiter and drink under those circumstances. The officers also noted that a short distance away, a crack house was in operation. The officers, however, had never known Cook to frequent the crack house or to be involved in the use or sale of crack cocaine.

"As the officers entered the parking lot on November 6, 1994, they saw Cook sitting with another person in a disabled pickup truck located therein which was supported by cinder blocks under the frame. The officers had observed the truck in the lot for about a year, but had never seen anyone in the truck before. There was no one else in the lot at the time.

"The officers decided to approach the truck and find out why Cook and his companion were in the truck. Officer Stapleton approached on the driver's side of the vehicle while Officer Daly approached the passenger side of the vehicle. Both officers could see that Cook sat in the driver's side with his right arm lying across the back of the seat and his left elbow propped on the window ledge. Officer Stapleton asked Cook who owned the truck, and Cook responded that the truck belonged to a friend who lived nearby. The officers did not check to verify who owned the truck or whether Cook had permission from the owner to be in the truck.

"Officer Daly ordered Cook's companion, a Mr. Underhill, to step out of the vehicle. Officer Daly frisked Underhill and found no weapons or contraband. Officer Daly then asked Officer Stapleton to remove Cook from the truck, Officer Daly saw a piece of crack cocaine on the back of the seat where Cook had rested his right arm.

"Prior to removing Cook from the truck, the officers had not received any complaints or reports concerning Cook's sitting in the truck. Throughout the officers' observations of Cook and Underhill, neither Cook nor Underhill made any furtive movements. Cook and Underhill were not loud or boisterous. Both men were calm and cooperative with the officers. Prior to removing the men from the truck, the officers did not observe any alcohol, weapons or contraband in the truck.

"A defense witness, Jimmy Howard, testified at the motion to suppress hearing that he was the owner of the truck that Cook was sitting in on November 6, 1994. Mr. Howard had obtained permission from the owners of the parking lot to park his truck in the lot. Howard had given Cook permission to sleep in the truck whenever he wanted.

"LAW AND ANALYSIS

 "Under warrantless, investigatory circumstances, a police officer may not intrude upon a person's freedom unless the officer is 'able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' *Terry v. Ohio,* 392 U.S. 1, 21 [88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906] (1968). The reasonableness of an officer's actions is to be judged against an objective standard: 'would the facts available to the officer at the moment of the seizure or the search 'warrant a man of

reasonable caution in the belief' that the action taken was appropriate?' (Citations and footnotes omitted.) *Id.*

■ "Before an officer's investigatory procedure is to be scrutinized under the Fourth Amendment and the dictates of *Terry,* a seizure of the person must have occurred. 'A person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' *United States v. Mendenhall,* 446 U.S. 544, 554 [100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509] (1980).

■ "The court in *Mendenhall* listed some of the circumstances which 'might' indicate a seizure: 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.' *Id.*

■ "Applying the totality of the circumstances test to the case *sub judice,* it is clear that Defendant was seized when he was ordered out of the pickup truck. The encounter between Defendant and the police officers did not involve a one-on-one conversation between Defendant and one police officer. Rather, Defendant and Underhill were approached from at least two directions by four uniformed, armed police officers. One officer, Officer Daly, approached and questioned Underhill while another officer, Officer Stapleton, approached and questioned Defendant. Officer Daly removed Underhill from the truck, frisked him, and then told Officer Stapleton to remove Cook from the truck. A reasonable person, being aware of the presence of four officers, after being questioned by an officer and seeing another officer seize and frisk his companion, would not feel free to leave or disregard the officer's command to step out of the truck. Therefore, this Court finds that Defendant was seized by Officer Stapleton when Officer Stapleton ordered Defendant out of the truck. It was only upon Officer Stapleton's seizure of Defendant that Officer Daly discovered crack cocaine where Defendant had rested his right arm on the rear of the seat.

"Courts of Appeals in Ohio have on several occasions applied the *Mendenhall* test to find that a seizure has occurred under circumstances more benign than those presented in the case under consideration. For instance, in *State v. Fincher* (1991), 76 Ohio App.3d 721, 724–725 [603 N.E.2d 329, 331–332], the Cuyahoga County Court of Appeals found a seizure had occurred when police officers approached the appellant in a cruiser, exited the cruiser and approached within ten feet of the appellant, at which time the appellant dropped a pill bottle containing crack cocaine. Relying on the *Mendenhall* test, the *Fincher* Court found a seizure occurred when 'appellant walked toward a car that had stopped

but walked away when he saw the police. On those facts alone, appellant was "seized": his freedom of movement was curtailed by physical force or show of authority.' *Id.,* citing *United States v. Mendenhall* [*supra* ].

"Additionally, the Cuyahoga County Court of Appeals found a seizure had occurred in *State v. Nealen* (1992), 84 Ohio App.3d 235 [616 N.E.2d 944], after applying the *Mendenhall* test. In *Nealen,* police officers saw the appellant approach a parked car while holding his left hand closed in a fist. *Id.* at 236 [616 N.E.2d at 945]. The officers identified themselves as police officers, asked the appellant what he was doing and asked the appellant to enter the parked car, and two pieces of cocaine popped out of his hand. *Id.* The Court determined that a reasonable person could assume he was not free to leave when 'the officers *drove up to* defendant, *identified* themselves as *policemen, asked him what he was doing* and *what he had in his hand.*' (Emphasis *sic.*) *Id.* at 24[2] [616 N.E.2d at 949]. The Court ruled that because a reasonable person in appellant's situation would not feel free to leave, the appellant had been seized for purposes of the Fourth Amendment. *Id.* With reference to the officers' discovery of the cocaine in *Nealen,* the Court found that the appellant had not accidentally dropped the cocaine: 'it was not a voluntary act, but occurred only after the officers' stop and interrogation of Defendant.' *Id.*

"Finally, the Portage County Court of Appeals found a seizure had occurred in *State v. Horvath* (Sept. 3, 1993), Portage Cty.App. No. 92–P–0072, unreported [1993 WL 346402].. In *Horvath,* two police officers saw appellant and another man sitting in a parked truck in the lot of a tavern, and observed the two men leaning toward the center of the front of the cab. The men exited the truck and started walking toward the entrance of the tavern. The officers confronted the two men and asked for identification. *Id.* Appellant stated to the officers that he had left his identification in the truck. Appellant's companion returned to the truck with one of the officers to find appellant's license, while the other officer remained with appellant. At the truck, the appellant's companion found he had locked his keys in the truck. Appellant's companion then entered the truck cab through the rear sliding window as the officer looked on. The officer shined his flashlight into the cab and saw what later proved to be cocaine on a wallet that was on the console in front of the passenger seat. Applying the *Mendenhall* test, the *Horvath* Court determined that although the encounter between the officers and appellant began consensually, it ripened into a seizure. *Id.* at 5. The Court concluded, 'Hence, with an officer of the law hovering over and watching closely, without indicating whether he or she was free to leave, the reasonable person would have felt compelled to produce the requested item before he or she was free to leave.' *Id.*

"The circumstances that produced seizures in *Fincher, Nealen* and *Horvath* are far less coercive and threatening shows of authority than existed in the case at bar. Unlike the three cited cases, where only one or two officers were involved, Cook and Underhill were surrounded by four officers. Unlike the officers in *Fincher,* who came within ten feet of Fincher, the officers in Defendant's case stood directly next to the doors of the truck. Somewhat like the officers in *Nealen,* who identified themselves as police officers and asked Nealen what he was doing and what he had in his hand, the four uniformed officers in Defendant's case questioned Defendant and Underhill at close range about their identities, about why they were in the truck, and about who owned the truck. Moreover, Officer Daly ordered Mr. Underhill out of the truck and frisked him before Officer Stapleton ordered Cook out of the truck. Finally, similar to the circumstances in *Horvath* where the officer 'hovered' over the individual who returned to the truck to find appellant's identification, the officers in Defendant's case were never more than an arm's reach away from Defendant; but, unlike in *Horvath,* where the officer observed the cocaine in the truck through the window by use of a flashlight, the officers in Defendant's case discovered the crack as a direct result of their removing Defendant from his seat.

"Based on the totality of the circumstances in the case at bar, Defendant was seized for purposes of the Fourth Amendment.

■ "The officer's seizure of Defendant was unreasonable under the dictates of *Terry v. Ohio,* 329 [392] U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968). Under *Terry,* in order to justify an officer's seizure of an individual, the officer must possess a reasonable articulable suspicion based on objective facts and inferences which may be drawn from those facts that the individual is involved in criminal activity. In Defendant's case, the officer's primary concern with the parking lot where the officers discovered Defendant in the truck was that groups of individuals often gathered to drink alcohol around a nearby wall. There were no individuals drinking alcohol near the wall in the parking lot when the officers approached Defendant. The officers had never previously encountered anyone involved in criminal activity in the truck. The officers had never received a complaint, dispatch or broadcast concerning Defendant or Underhill.

"Prior to the seizure of Defendant, the officers neither heard nor saw anything that would lead them to suspect that Defendant or Underhill was involved in criminal activity. Therefore, the seizure of Defendant was unreasonable, and the evidence which resulted from the seizure should be suppressed.

■ "During the hearing on the motion to suppress, Officer Daly testified that he told Officer Stapleton to remove Defendant from the truck because Officer Daly could not tell whether Defendant might have a weapon concealed between

his body and the driver's side door. In *Terry*, the Supreme Court held that if a police officer reasonably fears for his or others' safety that a person is armed and dangerous, the officer may search the outer clothing of the person. *Id.* at 30 [88 S.Ct. at 1884, 20 L.Ed.2d at 911].

"Applying *Terry* to the facts of Defendant's case, the officer's fear was not reasonable. None of the officers knew either man in the truck to have been involved in any criminal activity except drinking in public on a prior occasion with other persons at the nearby wall. Neither Defendant nor Underhill acted nervously or made furtive movements or behaved in any manner that would suggest they were armed and likely to cause danger to anyone. In short, the two men were just sitting quietly in a disabled vehicle. By the time Officer Daly told Officer Stapleton to remove Defendant from the truck, he had already removed Underhill and frisked him. The passenger door where Defendant's companion had sat was opened. Officer Daly could see the interior of the truck, and all of Defendant's person including Defendant's hands were in plain view and had not moved throughout the officers' investigation. Officer Daly had such a clear view of Defendant that he was apparently able to see the one-one-hundredth of a gram of cocaine left on the rear of the seat when Defendant moved his arm. Also, apparently, Officer Stapleton, who stood next to Defendant, and did not have Officer Daly's clear view, did not himself fear that Defendant was armed and dangerous. From the facts presented, Officer Daly's fear was not reasonable, and his decision to have Defendant removed from the truck was unjustified under the Fourth Amendment.

"For the foregoing reasons, the Court hereby SUSTAINS Defendant's Motion to Suppress."

*Judgment affirmed.*

WOLFF and FAIN, JJ., concur.