OPINION
The State of Ohio appeals from the decision of the trial court to suppress crack cocaine found on the defendant at the time of his arrest. The State's appeal is filed pursuant to R.C.2945.67(A) and Crim.R. 12(J).
On January 6, 1997, James A. Williams was indicted for knowingly possessing a controlled substance, i.e. crack cocaine, or a compound, mixture, preparation or substance containing crack cocaine, in an amount exceeding one gram but in an amount not exceeding five grams contrary to R.C. § 2925.11(A). On March 7, 1997, Williams filed a motion to suppress evidence found on him at the time of his arrest because he contended that the search and seizure was conducted without a warrant and did not fall within one of the recognized exceptions to the warrant requirement. By entry dated June 18, 1997, the trial court sustained Williams' motion. The State filed a timely notice of appeal on June 25, 1997.
At approximately 9:50 p.m. on December 28, 1996, Officers Kenneth Daly and Robert Orndorff of the Dayton Police Department were patrolling the area of Yuma Place in order to enforce the Dayton Metropolitan Housing Association's Trespass List. Daly had been a member of the Dayton Police Department for five years and had spent the entire five years on uniform patrol with the Fifth District. In his five years with the department, Officer Daly's primary duties were drug and prostitution suppression and enforcing the DMHA trespass list. In this capacity, he had been out to the Yuma Place area on a regular basis and had made numerous arrests. There had also been several complaints about the area regarding drug activity. Daly has made approximately 200 drug arrests in the area in the past 5 years.
On the evening of December 28, 1997, Daly and Orndorff parked near the berm on the north end of Yuma Court and then walked to the center courtyard. Orndorff conducted a field interview of two men loitering near 130 and 132 Yuma Place to see if they were on the trespass list. The DMHA trespass list consists of a list of persons who have been notified by DMHA that they are no longer allowed on the property due to violations of DMHA rules. Most violations are for drug use, drug possession or weapons charges. (Tr. 9). While Officer Orndorff was conducting the field interviews, Officer Daly was acting as cover man. (Tr. 10). While Orndorff was doing this, he observed the defendant step out the door of 128 Yuma Place. Upon seeing Officer Orndorff, the defendant immediately stepped back into the apartment and pulled the door shut. (Tr. 10). The defendant and his girlfriend, Ebony Twitty, testified that the defendant was at 130 Yuma Place, visiting Ms. Twitty and his son. (Tr. 28, 38). The defendant testified that he stepped out of 130 Yuma Place.
Daly testified that two minutes after the defendant closed the apartment door at 128 Yuma, he reopened the door and stepped outside. Daly said the defendant "slid by, going eastbound down the buildings." (Tr. 10, 11).
Daly said he believed drug activity was occurring at 128 Yuma Place since a drug unit had served a search warrant at 128 Yuma Place two weeks earlier based upon three controlled buys from that location by the police. He also testified that the apartment was the subject of a nuisance abatement proceeding which evicted everyone but the resident of the apartment. Daly said he believed that the defendant was possibly one of the persons that was a subject of the abatement proceedings.
Daly testified he followed the defendant down the front of the apartment building and yelled for him to stop, Daly "jogged" after him. Daly said as soon as he got in front of the defendant, the defendant stuck his hand in his jacket pocket.
Daly testified that when the defendant refused to remove his hand from his pocket, he grabbed the defendant's hand and could feel the outline of a chunky substance like crack cocaine. Daly then removed a bag of crack cocaine from the defendant's pocket and arrested him. (Tr. 16).
On cross-examination, Daly acknowledged that the defendant was not on the DMHA trespass list and he was not charged with criminal trespass. (Tr. 18).
The defendant introduced into evidence the search warrant issued for the search of 124 Yuma Place on December 11, 1996. (Defense Exhibit 1). The affidavit for the warrant was also admitted in evidence and it indicated three controlled buys of crack cocaine occurred at 124 Yuma before the search warrant was issued for its search.
The exhibit was admitted with the court's admonition that the State was free to submit evidence of a search warrant issued for 128 Yuma Place. (Tr. 45).
In granting the defendant's suppression motion, the trial court made the following findings:
 Dayton Police Officers Daly and Orndorff were working at the Yuma Court area of Dayton, a Dayton Metropolitan Housing Authority owned residence facility, widely known for high levels of illicit drug activity. The officers were "enforcing the trespass list," meaning they were checking the identity of people on the premises to see if the individuals had been previously given notice by Dayton Metropolitan Housing Authority that they were barred from the property. Apparently, one can be included on the trespass list for a wide variety of reasons, including prior criminal conduct on the premises.
 Officer Orndorff had detained two individuals outside 128 Yuma Place and was questioning same. Officer Daly saw the door to 128 open, the Defendant look or step outside, and then return inside and shut the door. Daly averred that 128 Yuma had been the subject of a search warrant two weeks prior and that a "nuisance abatement procedure" to evict the occupants had been commenced. Neither of these averments turned out to be true. After about two minutes, Defendant exited 128 Yuma and walked east. Daly followed and yelled, stop. Defendant stuck his right hand into his pocket, turned toward the officer, and was grabbed by Daly. Daly felt a plastic bag with a chunky item therein in Defendant's hand which was secured inside Defendant's pocket. Daly testified he feared that Defendant could have had a weapon in the pocket and seized Defendant to control the situation for his own safety.
 The State urges that this is a classic Terry v. Ohio
situation, (1968), 392 U.S. 1. However, this Court finds that no articulable suspicion existed here to predicate the original police encounter with defendant. The information reference 128 Yuma was speculative at best, Daly having no first hand knowledge of same. In fact, the information is wrong. Citizens in Ohio still have protection against interaction with police absent probable cause or articulable suspicion, even if they live in or visit high crime neighborhoods.
 While this Court specifically rejects the notion that Daly did anything improper vis-a-vis Defendant or used racial epithets to Defendant, and further finds that the testimony of both Defendant and Ebony Twitty lack credibility on these points, nevertheless, this Court finds the Terry, supra, rationale for the initial police encounter with Defendant to be insufficient.
The State contends, in its first assignment of error, that the trial court erred to its prejudice by admitting the search warrant for 124 Yuma Place as it was irrelevant and had no probative value. We disagree. This warrant issued two weeks before the events in question and based upon evidence of three controlled buys of crack cocaine was some evidence suggesting the search warrant was actually executed at 124 Yuma Place and not 128 Yuma Place as testified to by Officer Daly. Certainly, the State was in a position to prove evidence that a search warrant was issued for 128 Yuma Place as alleged by the officer. The evidence was clearly relevant to contradict Officer Daly's testimony. See, Evid. R. 402. This assignment is without merit.
In its second assignment of error, the State argues the trial court erred in finding that the police officer did not have reasonable suspicion to stop appellee and conduct a frisk of him for weapons given the totality of circumstances. The State argues that reasonable suspicion existed for the defendant's stopping because Officer Daly learned that a search warrant had been executed at the apartment from which the defendant exited just prior to the stop. The State argues that Daly's conduct was reasonable because Daly felt it was possible that drug activity was still occurring at 128 Yuma Place.
The State assumes the truth of evidence which the trial court specifically found was false. The trial court is in the best position to assess the credibility of the witnesses. The court concluded that Officer Daly had testified to important facts which were not true. The court does not indicate whether Daly's belief in these facts was in good faith. See, e.g. Arizona v. Evans
(1995), 514 U.S. 1, 115 S.Ct. 1185.
As was first articulated in the seminal case of Terry v. Ohio
(1968), 392 U.S. 1, 88 S.Ct. 1868, a police officer is allowed to briefly stop an individual when the officer reasonably suspects that the individual is involved, or has been involved, in criminal behavior. In order for such a stop to be constitutionally permissible, the officer's level of suspicion does not have to be as great as is necessary to support a finding of probable cause; instead, the officer must have only a "reasonable suspicion" of criminal behavior. United States v. Montoya de Hernandez (1985),473 U.S. 531, 105 S.Ct. 3304.
In defining the "reasonable suspicion" standard, the United States Supreme Court has indicated that an inarticulate hunch is insufficient to justify an investigatory stop. See Brown v. Texas
(1979), 443 U.S. 47, 99 S.Ct. 2637. Instead, the stop must be based upon some objective justification, i.e., the officer "must be able to point to specific and articulable facts which, taken together with rational inferences, from those facts, reasonably warrant the intrusion." Terry at 21, 88 S.Ct. at 1880.
In applying the foregoing standard, the Supreme Court of Ohio has held that the reasonableness of the officer's actions must be viewed in light of the totality of the surrounding circumstances.State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489. Moreover, the Supreme Court has stated that deference must be given to the officer's training and experience. State v. Andrews
(1991), 57 Ohio St.3d 86, 565 N.E.2d 1271.
In State v. Fincher (1991), 76 Ohio App.3d 721, the Cuyahoga County Court of Appeals held that a stop was not warranted when (1) the defendant was seen standing by a vehicle in a drug area talking to its occupants, and (2) the defendant quickly walked away from the vehicle when he saw the officers approaching.
Stripped of the evidence that the defendant was seen leaving a residence recently searched for drugs, the defendant's conduct was insufficient to support Officer Daly's conclusion that the defendant was engaged in criminal activity. The trial court properly concluded the stop of the defendant by Daly was constitutionally unreasonable and thus was required to suppress the evidence obtained as a result of the improper seizure. The second assignment of error is overruled.
The judgment of the trial court is Affirmed.
YOUNG, P.J., and WOLFF, J. concur.
Copies mailed to:
Karyn J. Lynn
Suzanne M. Lough Wynn
Hon. John Kessler