Appellant appeals his conviction and sentencing for burglary, theft and possession of criminal tools. Because the record supports the jury's verdict and the trial court did not err when it sentenced appellant pursuant to the sentencing guidelines in effect prior to the effective date of Am.Sub.S.B. No. 2, we affirm.
Appellant Cleophus Guthridge was indicted on June 13, 1996 by a Cuyahoga County Grand Jury on one count of burglary in violation of R.C. 2911.12, one count of theft in violation of R.C. 2913.02, and one count of possessing criminal tools in violation of R.C.2923.24.
Appellant proceeded to trial on January 20, 1998. The following facts were adduced at trial.
Sergeant Phillip Lowery was driving while on patrol on May 5, 1996 when he received a radio call that a brown and yellow house "was being broken into on East 90th and Hough." The address was 1756 East 90th Street. As he approached the house, he observed two males, one standing in the doorway and one standing approximately six feet away from the doorway. The man who was standing away from the door then "took off."
Sgt. Lowery apprehended the male who had been standing in the doorway and broadcast a report stating that a black male with dreadlocks was running westbound away from the scene. He noticed that the house was in total disarray and that the door had been "jimmied." The marks on the door were "fresh."
At approximately 6:15 p.m., Albert Walton, a Sergeant with the Cleveland Police Department, was alone on basic patrol when he received a call over his radio that two males were breaking into a home on East 90th Street in the City of Cleveland, Ohio. As he approached the area of 89th Street and Hough Avenue, he was stopped at a traffic light. While he was waiting at the light, he observed a male with dreadlocks running from East 90th Street onto Hough Avenue, heading westbound.
Sgt. Walton observed the male constantly looking over his shoulder as he ran. He then witnessed the male run into a vacant lot and behind a parked truck. When the traffic light turned green, Sgt. Walton advanced toward the truck and observed the man behind the truck "as if he was hiding."
Sgt. Walton then approached the male and "put him up against the truck and patted him down." The sergeant identified appellant as the man that he had observed and eventually patted down. The "pat down" revealed a gold metal bracelet, two pairs of pliers, one channel grip and a smaller pair, and a flashlight.
Officer Michael Cozart responded to Sgt. Walton's request for assistance. He arrived and observed Walton "checking" a male against a truck. He identified appellant as the male he observed.
The officer then transported appellant back to the scene of East 90th and Hough, along with the tools and the bracelet Sgt. Walton had discovered pursuant to his "pat down" of appellant. There, Sgt. Lowery identified appellant as the individual that he had witnessed running away from the home.
Sgt. Walton also proceeded to the home and took pictures of the house. He testified that there were "pry markings" on the door and the door knob "had been stripped." The sergeant acknowledged that neither fingerprints nor footprints were taken in the house.
The police report pertaining to the incident read that the radio broadcast stated to respond to reports of "a male" breaking into a house. On cross-examination, Sgt. Walton admitted that the broadcast as he reported in his police report may have stated that one male was being sought, although he recalled hearing that two males were involved. He also stated that a second broadcast contained a description of a male with dreadlocks. Sgt. Lowery acknowledged that the police report stated that the broadcast involved only one male; however, he testified that he did not prepare the report but relayed the information to the "rookie who was on the scene."
Marshalette Tolliver, whose grandparents had owned the property at 1756 East 90th Street, testified that both grandparents were deceased. At the time of the incident, the house was empty but fully furnished. Her son and cousin had last been living in the home and had left it in approximately November of 1995.
Marshalette's cousin, Michelle Tolliver, testified that relatives had been living in the home "off and on" in May 1996. She stopped by approximately once per week to check on the house. The house was fully furnished, and all of the utilities were on.
Marshalette had been to the house a few days before the May 5, 1996 incident and noted that all of the furnishings were still in the house and the doors were all locked. She identified State's Exhibit One, the bracelet that had been found on appellant, as a bracelet that she believed she had seen on a dresser in the house. Marshallette was unable to say whether the bracelet she had seen was definitely her grandfather's; however, Michelle happened to drive by the home on the night of May 5, 1996 when she saw several police officers around the house. After identifying herself, one of the officers showed her State's Exhibit One, which she immediately identified as her "grand daddy's bracelet."
Appellant was the sole witness for the defense. Appellant is forty-six years old and the single parent of a thirteen-year-old daughter. He testified that he is a photographer and is also skilled in carpentry, drywall and concrete. He has previously worked for an interior design firm but has not been employed for approximately one year. Appellant testified that he had been attacked by two men and suffered an injury to his wrist so that he was unable to work.
According to appellant, on the afternoon of May 5, 1996, he was heading towards a store located on 89th Street. He was in the store and had to urinate, so he "stepped outside on the side of the building" and there encountered Sgt. Walton. The sergeant placed appellant in his automobile and transported appellant first to the scene and later to the police station.
Appellant admitted that he had a gold bracelet with him that day. Appellant had lived in New Jersey prior to coming to Cleveland, and he testified that he had purchased a dozen of those bracelets wholesale on Canal Street in New York City. He kept two or three and gave the rest away as gifts. He had the bracelet in his pocket because he had been giving a friend an estimate on contracting work and he usually takes his jewelry off while he works.
Appellant further testified that because of the work he does, he generally carries tools with him. He admitted to having wire cutters but denied carrying either the pliers or a flashlight.
Appellant denied knowing the co-defendant. Appellant also denied any involvement with the incident on May 5.
On January 21, 1998, the jury found appellant guilty as charged in the indictment. The trial court immediately proceeded to sentencing. Appellant was sentenced to an indefinite term of three to fifteen years on the burglary count and to a definite term of one year on each of the remaining counts; all counts to run concurrently.
Appellant timely appealed the jury's verdict and his sentencing.
Appellant's first assignment of error states:
 THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO SENTENCE THE APPELLANT PURSUANT TO THE NEW SENTENCING GUIDELINES OF SENATE BILL 2, THE SENTENCING WAS IN VIOLATION OF THE OHIO CONSTITUTION AND DUE PROCESS.
Appellant's first assignment of error contends the trial court erred when it sentenced appellant on January 21, 1998 pursuant to the sentencing guidelines in effect prior to July 1, 1996, the effective date of Am.Sub.S.B. No. 2(S.B.2).
The General Assembly substantially altered the sentencing procedure in Ohio when it enacted S.B. 2. See State v. Rush
(1998), 83 Ohio St.3d 53, citing 146 Ohio Laws, Part IV, 7136; Legislative Service Commission Analysis of Sub.S.B. No. 2, Parts II and V (1995) — Appellant maintains that he should have been sentenced under the revised sentencing format established by S.B. 2 because he was sentenced on January 21, 1998, after S.B. 2 became effective.
In support of his position, appellant relies on several cases from this district that held that a conflict existed between R.C.1.58(B)[1] and S.B. 2; thus, the law must be construed in favor of the accused, and the offender is entitled to be sentenced pursuant to the guidelines as amended. R.C. 2901.04
(A).[2]
However, the Ohio Supreme Court, in State v. Rush, supra,
addressed the argument that R.C. 1.58(B) confers a right to elect sentencing under S.B. 2, holding:
 Because the General Assembly has expressly stated that the amended sentencing provisions of Am.Sub.S.B. No. 2 are applicable only to those crimes committed on or after its effective date, R.C. 1.58(B) is inapplicable. The amended sentencing provisions of Am.Sub.S.B. No. 2 apply only to those crimes committed on or after July 1, 1996.
Rush, supra, at paragraph two of the syllabus.
The crime for which appellant was sentenced occurred on May 5, 1996. Therefore, the trial court correctly sentenced him pursuant to the provisions in effect prior to the effective date of S.B. 2.
Appellant's first assignment of error is overruled.
Appellant's second assignment of error states:
 THE WEIGHT OF THE EVIDENCE DID NOT SUPPORT THE APPELLANT'S CONVICTION OF BURGLARY, THEFT AND POSSESSION OF CRIMINAL TOOLS.
Appellant next maintains that the jury's verdict was against the manifest weight of the evidence.
The Ohio Supreme Court in State v. Thompkins(1997), 78 Ohio St.3d 380,387 quoting Black's Law Dictionary (6 Ed. 1990) 1433, noted that:
 * * * [w]eight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief."
(Emphasis in original.)
The Thompkins court approved the test to be applied as set forth in State v. Martin(1983), 21 Ohio App.3d 172:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
The following guidelines, enumerated in State v. Mattison
(1985), 23 Ohio App.3d 10, have been useful when making such a determination:
 1. The reviewing court is not required to accept as true the incredible;
2. Whether the evidence is uncontradicted;
3. Whether a witness was impeached;
4. What was not proved;
5. The certainty of the evidence;
6. The reliability of the evidence;
7. Whether a witness' testimony is self-serving;
 8. Whether the evidence is vague, uncertain, conflicting or fragmentary.
See, e.g., State v. Fincher(1991), 76 Ohio App.3d 721, 728-729.
A review of the transcript of the trial on this matter as well as the entire record reveals that the jury's decision is not against the weight of the evidence. Sgt. Lowery observed a black male with dreadlocks run away from the scene in a westerly direction. Sgt. Walton observed a black male with dreadlocks running westbound. Both later identified the man they saw running as appellant. In contrast, appellant's uncorroborated testimony was that he merely "stepped outside" and there encountered Sgt. Walton.
Additionally, Sgt. Walton, following a "pat down" of appellant, discovered a gold metal bracelet, pliers and a flashlight. Although appellant testified that the bracelet was one of several that he had purchased, Michelle Tolliver identified the bracelet as one that had belonged to one of the homeowners. Moreover, in spite of appellant's testimony that he was not carrying either pliers or a flashlight, both Sgt. Walton and Officer Cozart testified that these items were found on appellant.
There was substantial testimony supporting appellant's conviction on each of the counts in the indictment. Appellant's second assignment of error is overruled.
The trial court's decision is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JOHN T. PATTON, P.J. and JAMES D. SWEENEY, J. CONCUR
 ___________________________________ JUDGE KENNETH A. ROCCO
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26 (A); Loc. App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26 (A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] R.C. 1.58(B)provides: "If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended."
[2] See, e.g., State v. Dempsey(Nov. 20, 1997), Cuyahoga App. No. 71479, unreported, overruled at (1998), 83 Ohio St.3d 107.